**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 22nd day of February, 2016.**



_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

**In re:**

**ALBOLFAZL FAKHARI,**                                                           Case No. 15-20635
      **Debtor.**

## MEMORANDUM OPINION AND ORDER DENYING
## RAYNE-STORM, LLC, STAY RELIEF

The Court considers the Motion for Relief from [Automatic] Stay (Doc. 27) and the Memorandum in Support of Motion for Relief from [Automatic] Stay filed by Rayne-Storm Co., LLC (Doc. 41), and the Debtor Albolfazl Fakhari's Objection thereto (Doc. 32). The parties appear by counsel.[1] The Court has reviewed the pleadings and considered oral arguments of counsel. The Court is prepared to rule.

### VENUE AND JURISDICTION

This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C.

---

[1] Debtor appears by his attorney, Colin N. Gotham of Evans & Mullinix, P.A., Shawnee, KS. Rayne-Storm Co., LLC, appears by its attorney, Robert F. Flynn of The Flynn Law Firm, P.A., Kansas City, MO.

16.02.22 Fakhari Memo Order.dotm

§§ 157(a) and 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013.[2] Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). The parties do not object to venue or jurisdiction.

## BACKGROUND

The Debtor's residence (Residence) and homestead (Homestead)[3] was damaged during a storm.[4] The majority of the damages and the repairs were to the roof of the Residence, and the repairs were performed by Rayne-Storm, LLC. In 2012, Rayne-Storm sued Debtor for non-payment and costs. During 2014, a jury returned a verdict in favor of Rayne-Storm in the amount of $19,129.44, less $5,000 that had been paid by Debtor to Rayne-Storm, and against Debtor for a net judgment (prior to the assessment of costs) of $14,129.44 as damages for the Debtor's breach of contract and non-payment of the net sum owed for repairs to the Residence. Rayne-Storm did not file a mechanic's lien against the Residence, but elected to proceed with litigation against the Debtor. The Debtor unsuccessfully asserted affirmative defenses and a counterclaim against Rayne-Storm's owner, facts which are not relevant to this Court's analysis. Subsequent to the jury verdict, the state court awarded Rayne-Storm $72,000.00 in attorney's fees and $350.50 in costs, for a total judgment of $86,479.94 (Judgment) with post-judgment interest accruing thereon. Both the Residence and the lawsuit are located in Johnson County,

---

[2] D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014).
[3] The homestead exemption laws are remedial in nature and not an estate, the function of which is to protect debtor's interest in property, in this instance, the Debtor's Residence. Rayne-Storm does not contest that Debtor's Residence is his homestead.
[4] It is unclear from the record, but it appears that the storm damage occurred during 2011 or 2012.

- 2 -
16.02.22 Fakhari Memo Order.dotm

Kansas. The initial journal entry that reflected the jury verdict in the amount of $14,129.44, plus costs, was filed in the state court on September 19, 2014. Thereafter, Rayne-Storm filed a motion for costs and attorney's fees, upon which the state court entered judgment on January 13, 2015, for $72,000.00 in attorney's fees plus $350.50 in court costs.[5] The Judgment was entered in the same county in which the Residence is located.

This bankruptcy case was filed on April 2, 2015. The Debtor listed Rayne-Storm on Schedule F as a general unsecured creditor in the amount of $86,479.44. On April 2, 2015, Debtor's counsel filed a Notice of Bankruptcy Filing in the state court proceeding, and a copy thereof was served on Rayne-Storm's counsel.[6] The original Chapter 13 plan was confirmed by this Court on June 26, 2015. Rayne-Storm did not file an objection to confirmation of the plan and does not assert inadequate notice. Rayne-Storm did not timely file a proof of claim, but did file a motion to file a proof of claim out of time,[7] which this Court denied. Since Rayne-Storm tardily filed its proof of claim, the Debtor objected to the proof of claim as untimely,[8] which objection this Court sustained.[9]

By virtue of Rayne-Storm's prepetition garnishment of the Debtor's wages, Rayne-Storm attached and retained $379.83 of the Debtor's post-petition wages after this case was filed. Debtor's counsel made demand upon Rayne-Storm for delivery of these funds as they constituted property of the bankruptcy estate, and retention thereof was in violation of § 362(a) and § 542. Rayne-Storm refused to turn over this property of the estate, and the Debtor on August 5, 2015, filed a motion for contempt against Rayne-Storm,[10] which this Court heard on September 18,

---

[5] Rayne-Storm sought total attorney's fees in the amount of $120,000, which request was reduced by the state court judge to $72,000.
[6] *See* Doc. 21, Ex. 2.
[7] Doc. 23.
[8] Doc. 33.
[9] Doc. 52.
[10] Doc. 21.

- 3 -
16.02.22 Fakhari Memo Order.dotm

2015.  This Court directed that Rayne-Storm pay the post-petition wages to the Debtor and found that Rayne-Storm's actions were contemptuous and violated § 362(a)[11] and § 542.[12]

Rayne-Storm did not file an objection to allowance of the Debtor's Residence as his homestead and the time to do so has passed.  Hence, the exemption of the Residence as a homestead is allowed.[13]

Rayne-Storm did not file a complaint to determine the dischargeability of the Judgment.

## LEGAL ANALYSIS

In Chapter 13, the debtor has the exclusive right to file a plan.[14]  "The exclusive right on the part of the debtor to file a Chapter 13 plan is in keeping with the voluntary nature of Chapter 13 relief."[15]  Confirmation of a Chapter 13 plan is binding upon the debtor and his creditors, regardless of whether the claim of a creditor is provided for by the plan and regardless of whether the creditor has objected to, accepted, or rejected the plan. "Upon becoming final, the order confirming a Chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained in the plan."[16]  Even improper provisions in a confirmed plan are binding.[17]  Silence or the failure to object, is acceptance of the debtor's plan as to procedural and legal challenges to the content of the plan, otherwise known as the "snooze, you lose" rule.[18] Recognizing that Rayne-Storm does not have an allowed proof of claim, either general unsecured

---

[11] Doc. 46.
[12] The Court found that an award of attorney's fees to Debtor under § 362(k) was warranted; that issue remains pending.
[13] Taylor v. Freeland & Kronz, 503 U.S. 638, 642 (1992).
[14] 8 COLLIER ON BANKRUPTCY ¶1321 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2015).
[15] 8 COLLIER ON BANKRUPTCY ¶¶1321.01, 1321-2 and 1321-3.
[16] *See* 8 COLLIER ON BANKRUPTCY, ¶1327.02[1], at 1327-3.
[17]*See* United Student Aid Funds, Inc., v. Espinosa, 559 U.S. 260, 275 (2010) (concluding that a provision in the debtor's confirmed Chapter 13 plan that discharged student loan interest in contravention of § 523(a)(8) was binding on the student loan creditor even though the debtor did not comply with the procedural requisites to determine that not discharging the student loan interest was an undue hardship on him).
[18] Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 229.1, Sec. Rev. Oct. 8, 2010, www.Ch13online.com.

or secured, it is nevertheless bound by the treatment afforded general unsecured creditors in the Debtor's confirmed plan, which provides:

> 14. GENERAL UNSECURED CREDITORS: General unsecured claims will be paid after all other unsecured claims, including administrative and priority claims, from Debtor's projected disposable income in an amount not less than the amount those creditors would receive if the estate of Debtor were liquidated under chapter 7 on the date of confirmation pursuant to 11 U.S.C. § 1325(a)(4), the "best interest of creditors" test.[19]

Rayne-Storm in its Memorandum in Support of Motion for Relief from Stay (Doc. 41) alleges that by virtue of the Judgment, it has a lien in the Debtor's Residence, that the lien is entitled to adequate protection, and that since the Debtor has little, if any, equity in this Residence above the alleged lien, Rayne-Storm is not adequately protected, is entitled to relief from the automatic stay, and may foreclose upon its judgment lien in state court. The infirmity in this argument is that Rayne-Storm does not hold a lien or any other interest in the Residence. The Debtor's claimed homestead exemption has been allowed as a matter of law and may not be collaterally attacked.

> Section 522(b)(2) provides the statutory framework for exemptions under the Bankruptcy Code. Under § 522(b)(2), a debtor may exempt any property which is exempt under federal non-bankruptcy law or, alternatively, under the laws of the state of the debtor's domicile. However, §§ 60–2312 prohibits Kansas citizens from electing to use federal bankruptcy exemptions, with certain exceptions inapplicable here.[20]

Importantly, it is the remedial protection afforded to Debtor's Residence by virtue of its status as his homestead that insulates the Residence from a judgment lien. It is axiomatic that under Kansas law a judgment lien does not attach to a homestead unless the underlying

---

[19] Doc. 5, at 10.

[20] In re Kester, 339 B.R. 764, 768 (Bankr. D. Kan. 2005) (citations omitted), *aff'd*, 339 B.R. 749 (B.A.P. 10th Cir. 2006), *certified question answered sub nom.* Redmond v. Kester, 284 Kan. 209, 159 P.3d 1004 (2007), and *aff'd*, 493 F.3d 1208 (10th Cir. 2007).

obligation falls within a narrow class of exceptions.[21]  The homestead exemption is codified at K.S.A. § 60-2301, which provides:

> A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or **for the erection of improvements thereon**. The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife, when that relation exists.[22]

Further, "the homestead exemption codified in K.S.A. § 60-2301 originates in the Kansas Constitution, which provides in relevant part:

> A homestead to the extent of one hundred and sixty acres of farming land, or one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or **for the erection of improvements thereon**: Provided, That provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife...." Kan. Const. Art. 15, § 9.[23]

"This constitutional remedy [homestead exemption] has been zealously guarded and enforced by the courts of this state."[24]  Exemptions in Kansas enjoy a liberal reading in favor of the debtor.[25]  This is particularly true with respect to the Constitutional homestead exemption.[26] The homestead exemption "was created to benefit families rather than creditors by protecting the

---

[21] In re McCoy, 204 B.R. 62, 65 (Bankr. D. Kan. 1996); In re Lewis, 2007 WL 625723, at *3 (Bankr. D. Kan.); In re Garstecki, 364 B.R. 95, 105 (Bankr. D. Kan. 2006).
[22] Redmond v. Kester, 284 Kan. 209, 210-11 (2007) (emphasis added).
[23] Kester at 211 (emphasis added).
[24] Kester at 211.
[25] Nohinek v. Logsdon, 6 Kan. App. 2d 342, 344 (1981).
[26] *Garstecki* 364 B.R. at 100.

- 6 -
16.02.22 Fakhari Memo Order.dotm

family from the destitution caused by losing the family home.[27] Even bad actors enjoy the rights of the homestead exemption.[28]

The Debtor's Residence is protected by the allowed homestead exemption, so the question remains whether one of the homestead exceptions delineated in K.S.A. § 60-2301 and the Kansas Constitution applies. The only argument made by Rayne-Storm is that a homestead shall not be exempt from sale for the payment of obligations contracted "for the erection of improvements thereon." Rayne-Storm argues that the repairs it conducted to the Debtor's Residence constitute improvements to the Residence. This Court disagrees and the facts and Kansas law demand that this Court reject Rayne-Storm's argument.

Rayne-Storm has provided copies of the following documents from the state court case: verdict forms exhibited as A, B, and C; journal entry filed on September 19, 2014, for returned verdicts from the jury that enters a damage judgment of $14,129.44 against Debtor; and the journal entry filed on January 13, 2015, that provides for the allowance of $72,000.00 as reasonable attorney's fees and $350.50 as court costs in Rayne-Storm's favor against Debtor. The problem with Rayne-Storm's argument is that it did not erect improvements on the Debtor's Residence and Homestead, but repaired it, the latter of which is not an obligation that is as an exception to the homestead exemption. This analysis is performed cognizant that "exceptions to the Constitutional and statutory homestead exemption are to be strictly construed in favor of the one claiming the exemption."[29]

---

[27] Kester at 217.
[28] *Id*. at 218.
[29] De Priest v. Ransom, 165 Kan. 147, 152, 154 (1948), finding that the homestead "erection of improvements" exception applied to a creditor who constructed and completed two dwelling houses on debtor's land (a portion of which was debtor's homestead); also stating in *dicta* that in order to prevail under the homestead exception, the judgment creditor should include language in the judgment that specifies what portion of the judgment is for the erection of improvements.

While it is true that Rayne-Storm holds a judgment against the Debtor and that generally judgments constitute "a lien on the real estate of the judgment debtor within the county in which judgment is rendered,"[30] without more, the judgment lien does not attach to a judgment debtor's homestead interest.[31]  Within another statutory context, the Kansas mechanic's lien statutes have been interpreted to exclude repairs from the definition of "improvement of the property."

> Black's Law Dictionary most closely defines what is meant by use of the phrase "improvement of the property" in K.S.A. 60-1101: "A valuable addition made to real property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." Black's Law Dictionary 757 (6th ed. 1990).[32]

The text of the homestead exemption, combined with the rule that the homestead exception is read in a manner most favorable to the owner, establishes that the "erection of improvements" does not include repairs to the Residence.  Rayne-Storm did not erect anything--it repaired damage to the Residence.  The state court pleadings and verdict forms submitted to this Court refer to the repair of the Debtor's Residence, and in no instance is improvement to the Residence referenced.  Such is reflected in Rayne-Storm's Memorandum in Support of Motion for Relief from Stay at footnotes 9, 10 and 11:

> [9] Exhibit A, ¶4; Exhibit C, p. 2 [Pretrial Order]
> Plaintiff's Legal Theories . . . Rayne and Fakhari entered into a written contract for Rayne to **repair damage** to Fakhari's home as a result of **storm damages** to the residence. . . . . Rayne performed work in a timely and workmanlike manner.  Fakhari breached the parties' contract by unilaterally rescinding the contract on November 2, 2011[,] and by failing to pay the amount due to Rayne under the terms of the contract . . . . Rayne furnished labor and roofing materials--amongst other building materials--to Fakhari with the reasonable expectation of being compensation [sic] for the labor and all residential building materials it provided to

---

[30] K.S.A. § 60-2202, Judgment Liens.
[31] *See supra* note 21.
[32] Haz-Mat Response, Inc. v. Certified Waste Svcs. Ltd., 259 Kan. 166, 175-76 (1996), defining improvement to property within the context of Kansas mechanic's lien laws at K.S.A. § 60-1101 *et seq.*, Liens of Contractors.  Of course, the "erection of improvements" applies to the homestead exemption and should be even more narrowly defined.  Certainly if removal of hazardous waste is not an improvement of real property under the mechanic's lien statute, then repair of a damaged roof is not the "erection of improvements" under the homestead exemption.

- 8 -
16.02.22 Fakhari Memo Order.dotm
Case 15-20635   Doc# 64   Filed 02/22/16   Page 8 of 12

Fakhari. Fakhari benefited from the labor and residential building materials in the form of a roof, attic, soffits, fascia, insulation, drywall, and more.

[10] Exhibit A, ¶4; Exhibit D, Jury Instruction 7: [Jury Instructions] Rayne-Storm Co., LLC claims that it has been damaged in that: There was a contract between Rayne-Storm Co., LLC and Abolfazl Fakhari for Rayne-Storm Co., LLC to perform all **storm-related repairs** that the homeowner's insurance company would pay for; While Rayne-Storm Co., LLC was performing the contract and already had replaced the roof, Abolfazl Fakhari refused to let Rayne-Storm Co., LLC finish the rest of the work; Rayne-Storm Co., LLC did its work in a timely and workmanlike manner; Abolfazl Fakhari breached the contract by refusing to let Rayne-Storm Co., LLC finish its work, refusing to let Rayne-Storm Co., LLC correct any allegedly deficient work, failing to pay what he owed under the contract [or at the very least pay for the work Rayne-Storm Co., LLC had already completed]; Even if the contract is not binding, Rayne-Storm Co, LLC conferred benefits on Abolfazl Fakhari, Abolfazl Fakhari knew he was receiving those benefits, and it would be unjust for Abolfazl Fakhari to avoid paying the fair market value of what he received; Abolfazl Fakhari owes money to Rayne-Storm Co., LLC for the work Rayne-Storm Co., LLC performed on his residence in the amount of $18,090.99 plus $3,752.10 for the contractual 15% cancelation fee. . . ." [sic]).

[11] Claim 3-1, p. 5: [Although referred to as a journal entry, this appears to be the jury verdict form.]
1. Was there a contract between Rayne-Storm Co., LLC and Abolfazl Fakhari?
   ✓ Yes __ No
2. Did Rayne-Storm Co., LLC perform the **repairs** to Abolfazl Fakhari's residence in a workmanlike manner?
   ✓: Yes __ No
3. Did Rayne-Storm Co., LLC perform the **repairs** to Abolfazl Fakhari's residence in a timely manner?
   ✓ Yes __ No
4. Did Abolfazl Fakhari material breach the contract with Rayne-Storm?
   ✓: Yes __ No
5. Did Rayne-Storm Co., LLC sustain damages as a result of Abolfazl Fakhari's breach of the parties' contract?
   ✓ Yes __ No[33]

Now that the Debtor has filed bankruptcy, Rayne-Storm unsuccessfully attempts to construe the Judgment for repairs as a liability arising from the erection of improvements on the Residence. In the state court pleadings and the relevant verdict form, the work performed on Debtor's Residence is referred to as repairs. Now that the matter is before the Bankruptcy Court,

---

[33] Doc. 41, at 5 (emphasis added).

Rayne-Storm makes no mention of repairs but asserts that it improved the Residence. The order of consolidation entered in the state court on September 13, 2012, specifically states: "Both lawsuits concern the construction **contract to repair damage** at the home of defendant herein and there are common issues of fact and law." (Emphasis added.) The state court pretrial order refers to repairs to the Debtor's home, the jury instruction 7 refers to storm-related repairs to Debtor's Residence, and the verdict form refers to the performance of "repairs" on Debtor's Residence.[34] Rayne-Storm pursued Debtor in the state court for non-payment of the repairs it performed on the Residence and represented that its work on the Residence was in the form of storm-related repairs. Here, Rayne-Storm attempts to redefine its cause of action, the jury findings, and the Judgment entered in the state court case.[35] Although Rayne-Storm's judgment was entered in the same county in which the Debtor's Residence is located, the judgment lien never attached to Debtor's Residence by virtue of the homestead exemption.[36] Since Rayne-Storm does not possess a lien or any other interest in Debtor's Residence, it is not entitled to adequate protection as it does not hold a secured claim, and this Court denies the motion for relief from automatic stay accordingly.

Rayne-Storm has not established grounds to grant relief from the automatic stay under § 362(d)(2) because it does not hold a lien or any interest in Debtor's Residence. To the extent relevant, the Debtor has plentiful equity above the mortgage lien, and the Residence is necessary to an effective reorganization. Cause is not established under § 362(d)(1) because Rayne-Storm does not have an interest in the Debtor's Residence that warrants adequate protection. Rayne-

---

[34] In their arguments, the parties assume that the "home" referenced in the state court is the Debtor's Residence.
[35] The Debtor does not argue, and this Court does not so rule, but Rayne-Storm's inconsistent position in the bankruptcy case as to the nature of the work performed on the Residence may be barred by judicial estoppel.
[36] *See supra* note 21.

Storm is a general unsecured creditor, with a liquidated debt, albeit without an allowed claim, that cannot establish cause for relief from the automatic stay.

Rayne-Storm further requests relief under § 362(d)(1) through this Court's equitable powers[37] and argues that good faith may warrant granting Rayne-Storm relief from the automatic stay. Rayne-Storm's arguments in this venue should have been raised prior to confirmation of the Debtor's plan; having failed to object to the Debtor's confirmed plan, it is improper to raise the issue of good faith or lack thereof in the filing of the Debtor's bankruptcy case or in the proposed Chapter 13 plan.[38] Confirmation of the plan operates as res judicata as to all issues and arguments that should have been raised prior to confirmation. It is inappropriate for this Court to exercise its equitable discretionary powers to grant relief from the automatic stay so late in the game. And one would query, what exactly would be gained by this relief? Rayne-Storm does not have a timely filed and allowed claim in this case or a lien on the Residence; Rayne-Storm did not object to confirmation of the Debtor's plan; Rayne-Storm violated the automatic stay by not turning over funds of the estate to the Debtor or to the Trustee; Rayne-Storm did not object to the dischargeability of its debt; and Rayne-Storm only held a general unsecured claim when this case was filed. Rayne-Storm has unsuccessfully attempted, without argument as to the distinction, to convert a state court judgment for damages arising from repair of the Residence to a judgment for the erection of improvements on the Debtor's Residence. However, as clearly established, by virtue of the homestead exemption a judgment lien never attached to the Residence.

---

[37] This Court is not imparted with equitable powers to modify, disrupt or surcharge an allowed exemption. *See* Law v. Siegel, 571 U.S. ---, 134 S. Ct. 1188 (2014).
[38] *See* § 1325(a)(3) and (a)(7); *see also* 8 COLLIER ON BANKRUPTCY ¶1325.08.

16.02.22 Fakhari Memo Order.dotm

## CONCLUSIONS OF LAW

Rayne-Storm's motion for relief from the automatic stay to enforce an alleged judgment lien against the Debtor's Residence and Homestead is denied for lack of cause shown under § 362(d). Rayne-Storm's state court judgment is for damages for breach of contract and the unpaid obligation for repair of the Debtor's Residence, as well as associated attorney's fees and costs, but not for the erection of improvements on the Debtor's Residence and Homestead. Since Rayne-Storm's Judgment does not fall within one of the limited exceptions to the homestead exemption set out in the Kansas Constitution[39] and K.S.A. § 60-2301, Rayne-Storm does not hold an interest, whether a lien or otherwise, in the Debtor's Homestead. An obligation and the judgment therefor that arise from repairs to a debtor's residence that is his homestead does not attach to the residence and is not an exception to the Kansas homestead exemption.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

---

[39] Kan. Const. Art. 15, § 9.